Docket No. 109151.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE ILLINOIS DEPARTMENT OF HEALTHCARE AND
FAMILY SERVICES *ex rel.* MARGARET WISZOWATY, n/k/a
Margaret Mihaila, Appellant, v. MARK WISZOWATY, Appellee.

*Opinion filed January 21, 2011.*

JUSTICE BURKE delivered the judgment of the court, with
opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman,
Karmeier, and Theis concurred in the judgment and opinion.

## OPINION

At issue in this appeal is whether delinquent child support
payments in Illinois began to bear mandatory interest in 1987 with the
passage of Public Act 85–2 (eff. May 1, 1987). The appellate court
concluded that they did not. 394 Ill. App. 3d 49. For the reasons that
follow, we reverse the judgment of the appellate court.

## Background
Mark Wiszowaty and Margaret Mihaila were married and had one
child. The couple divorced in 1991, shortly before their child's second

birthday. Pursuant to the judgment for dissolution of marriage, Mark was ordered to pay $48 per week in child support to Margaret through the clerk of the circuit court of Cook County, until the child's eighteenth birthday.

Years later, in 2005, Mark filed a petition for declaratory judgment, asking the circuit court of Cook County to declare and adjust child support payments that were in arrears. On January 25, 2006, the Illinois Department of Healthcare and Family Services (Department) filed a motion to intervene on Margaret's behalf and a petition for rule to show cause as to why Mark should not be held in contempt of court for failing to pay child support. According to the Department, Mark had paid some child support in 1991 but then paid no support from 1992 through 2005. The Department asked the court, among other things, to enter a judgment for the arrearage including interest accruing from the first missed payment in 1991.

Mark conceded the arrearage and that interest on the unpaid support payments became mandatory when certain amendments were made to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2000)) in 2000. However, Mark argued that, prior to that date, the imposition of interest was left to the discretion of the circuit court and that the circumstances of his case did not warrant imposing interest.

The Department, however, contended that the 2000 legislation was not the proper starting point for calculating mandatory interest. Instead, according to the Department, interest became mandatory in 1987, when the General Assembly enacted Public Act 85–2 (eff. May 1, 1987), and changed the law to provide that each unpaid installment of child support was a "judgment" by operation of law and that child support judgments "shall bear interest."

Relying on *In re Marriage of Steinberg*, 302 Ill. App. 3d 845 (1998), the circuit court rejected the Department's argument. The court also rejected the Department's alternative request for discretionary interest prior to 2000. The circuit court entered judgment against Mark for the arrearage in the amount of $52,889.41, but this total included post-2000 interest only. The appellate court affirmed, holding that interest was not made mandatory in 1987. 394 Ill. App. 3d 49. The appellate court recognized that a contrary result had been reached in *Burwell v. Burwell*, 324 Ill. App. 3d 206 (2001),

but the appellate court determined that *Burwell* had not adequately considered the relevant statutes in their historical context and had "reached a conclusion that is not well-founded." 394 Ill. App. 3d at 59.

We granted the Department's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 15, 2007). We allowed Scott Wagner, *pro se*, to file an *amicus curiae* brief on Mark's behalf.


Analysis

In 1987, with the passage of Public Act 85–2 (eff. May 1, 1987), the General Assembly amended the Marriage Act by adding the following provision:

> "Any new or existing support order entered by the court under this Section *shall be deemed to be a series of judgments* against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date of the corresponding payment or installment becomes due under the terms of the support order. *Each such judgment shall have the full force, effect and attributes of any other judgment of this State*, including the ability to be enforced." (Emphases added.) Ill. Rev. Stat. 1987, ch. 40, par. 505(c) (currently codified as 750 ILCS 5/505(d) (West 2008)).

This change was made in response to federal legislation which required states seeking certain federal funds to treat unpaid support payments as judgments as a condition of receiving those funds. See 42 U.S.C. §666(a)(9)(A) (2006); *Steinberg*, 302 Ill. App. 3d 845; *In re Marriage of Kaufman*, 299 Ill. App. 3d 508 (1998); Marilyn R. Smith, *Child Support at Home and Abroad: Road to the Hague*, 43 Fam. L.Q. 37, 46 (Spring 2009) (noting that prior to the federal legislation interstate enforcement of past-due child support payments was difficult because a proceeding was necessary to reduce the arrearage to an actual money judgment that could be enforced in other states).

Public Act 85–2 also amended section 12–109 of the Code of Civil Procedure (Code) to provide:

> "Interest on judgments. Every judgment except those arising

by operation of law from child support orders shall bear interest thereon as provided in Section 2–1303. Every judgment arising by operation of law from a child support order *shall bear interest as provided in Section 2–1303* commencing 30 days from the effective date of each judgment." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 12–109 (currently codified as 735 ILCS 5/12–109 (West 2008)).

Under section 2–1303 of the Code in 1987, and still today, "[j]udgments recovered in any court *shall draw interest* at the rate of 9% per annum from the date of the judgment until satisfied." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2–1303 (currently codified as 735 ILCS 5/2–1303 (West 2008)).

Thus, in Public Act 85–2, the legislature stated that unpaid child support payments "shall" be deemed judgments and that these judgments "shall bear interest" at the same rate as all other judgments. The use of the word "shall" generally indicates a mandatory requirement. *Holly v. Montes*, 231 Ill. 2d 153, 160 (2008). Accordingly, under the plain and ordinary language of the foregoing statutory amendments, past-due child support payments began to bear mandatory interest on May 1, 1987.

Despite the clear language of the statutory amendments, the appellate court concluded that interest was not made mandatory. According to the appellate court, this court's decision in *Finley v. Finley*, 81 Ill. 2d 317 (1980), established a general rule that dissolution actions are exempt from general statutes that establish interest requirements and that "the imposition of interest on child support judgments is a matter within the trial court's discretion." 394 Ill. App. 3d at 51. From this premise, the court held that the legislature had to be "clear and explicit if it had intended to change" that rule in 1987. *Id.* at 60. The appellate court found no such expression of intent in the passage of Public Act 85–2. With respect to the addition of section 505(d) of the Marriage Act, the appellate court concluded that it said nothing about mandatory and discretionary interest and therefore was not relevant. *Id.* at 59. With respect to section 12–109, the appellate court concluded that the legislative intent in amending the section was to add a 30-day grace period, not to change the rule that the award of interest on past-due

child support is discretionary. *Id.* at 60. Accordingly, the appellate court rejected the proposition that interest on unpaid child support payment had been mandatory since 1987. We disagree.

As the Department notes, *Finley* decided, *inter alia*, whether a custodial parent was entitled to interest on unpaid child support. At that time, in 1980, unpaid child support payments were not characterized as judgments. Indeed, as noted above, the reason section 505(d) was added to the Marriage Act was to make clear that each unpaid support payment was to be treated as a judgment. Further, in 1980 there was no statute referencing interest on unpaid child support payments. Only a general statutory provision on interest for judgments existed. See Ill. Rev. Stat. 1979, ch. 74, par. 3 ("Judgments recovered before any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied").

Since periodic child support payments were not judgments that fell within the terms of the general interest statute, the question at issue was whether any basis existed for awarding interest on those payments. This court in *Finley* looked at the nature of the dissolution proceeding, likened it to a chancery proceeding, and found that interest on support payments lay within the discretion of the court and would be allowed if "warranted by equitable considerations." *Finley*, 81 Ill. 2d at 332. In so holding, the court was relying on a principle of law that we have recently explained:

> "[I]t is well settled that interest is not recoverable absent a statute or agreement providing for it. [Citation.] An exception to this rule exists in equity. In chancery proceedings, the allowance of interest lies within the sound discretion of the judge and is allowed where warranted by equitable considerations and disallowed if such an award would not comport with justice and equity." (Internal quotation marks and emphasis omitted.) *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 257 (2006).

*Finley* thus stands for the proposition that, *where there are no controlling statutes* defining unpaid support payments as judgments or providing for interest, interest may be awarded on those payments as a discretionary matter because the divorce proceeding may be likened to a chancery proceeding. But *Finley* does not stand for the proposition that interest is left to the discretion of the circuit court

-5-

even when governing statutes have plainly stated otherwise. Indeed, such a reading of *Finley* would run counter to long-standing law:

> " 'We do not know of any power existing in a court of equity to dispense with the plain requirements of a statute; it has been always disclaimed, and the real or supposed hardship of no case can justify a court in so doing. When a statute has prescribed a plain rule, free from doubt and ambiguity, it is as well usurpation in a court of equity as in a court of law, to adjudge against it; and for a court of equity to relieve against its provisions, is the same as to repeal it.' " *First Federal Savings & Loan Ass'n of Chicago v. Walker*, 91 Ill. 2d 218, 227 (1982) (quoting *Stone v. Gardner*, 20 Ill. 304, 309 (1858)).

The General Assembly changed the law in 1987 by providing that each unpaid child support installment is an actual "judgment" that arises by operation of law, and that each such judgment "shall bear interest." Under the plain language of these statutory amendments, interest payments on child support payments became mandatory effective May, 1 1987. This court's decision in *Finley* does not compel a different result.


Conclusion

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.


Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded.