2026 IL App (4th) 250366

NO. 4-25-0366

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 22, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELIZABETH A. ESCAMILLA, | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| and | ) | Lee County |
| DANA ESCAMILLA, | ) | No. 24DC18 |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Matthew T. Klahn, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        Petitioner, Elizabeth A. Escamilla, appeals from the Lee County circuit court's declaratory judgment construing the terms of a premarital agreement in favor of respondent, Dana Escamilla. Petitioner argues the court erred when it determined the language in the premarital agreement constituted a valid waiver of her right to seek maintenance upon the dissolution of her marriage to respondent. Respondent asserts the court properly determined petitioner waived her right to maintenance based on the language in the premarital agreement and applicable Illinois law. We reverse and remand for further proceedings.

¶ 2                                 I. BACKGROUND

¶ 3                              A. Dissolution Petition

¶ 4        In April 2024, petitioner filed a petition for dissolution of marriage. The petition

asserted she was 44 years old and employed by Dixon Public School District No. 170. Respondent was 40 years old and employed by AMN Healthcare. The parties had been married since 2007 and had two minor children, A.E. (born in February 2011) and J.E. (born in September 2012). A.E. was born with special needs and has been diagnosed with selective mutism. Petitioner alleged she lacked both sufficient property and income to provide for her needs and the needs of her children commensurate with the standard of living established in the marriage. Petitioner requested she be awarded, *inter alia*, temporary and permanent maintenance.

¶ 5 In his answer to the petition, respondent requested he be awarded equal parenting time and decision-making responsibilities with respect to their two children. Respondent disputed petitioner's claim she lacked the ability to provide for her needs, asserting she had the potential to earn a much higher income based on her previous earnings during the marriage. Respondent further asserted, as an affirmative matter, petitioner was barred from seeking maintenance pursuant to the valid premarital agreement executed by the parties in September 2007.

¶ 6 In May 2024, petitioner filed a motion for temporary relief and for exclusive possession of the marital residence. In July 2025, the trial court held a hearing on petitioner's motion. At the hearing, petitioner asserted she was entitled to child support and maintenance. Respondent again asserted both parties waived their respective rights to maintenance via the premarital agreement executed in September 2007. The court admitted the premarital agreement into evidence, which included the following clause: "The wife by this Agreement waives, discharges, and releases any right, title or interests she may acquire in the property or estate of the husband at any time hereafter by reason of the marriage." The agreement additionally indicated it was subject to the laws of Illinois and the Illinois Uniform Premarital Agreement Act (Act) (750 ILCS 10/1 *et seq.* (West 2024)). Respondent testified petitioner drafted the agreement and had

worked as a paralegal at a law office at the time of its execution.

¶ 7                                    B. Motion for Declaratory Judgment

¶ 8            In September 2024, petitioner filed a motion seeking a declaratory judgment. In the motion, petitioner denied waiving her right to seek maintenance pursuant to the premarital agreement executed in September 2007 and requested the trial court issue a declaratory judgment on the validity of this alleged waiver. Petitioner argued that the agreement did not specifically refer to maintenance or any synonymous term and the definition of "property" in the agreement similarly did not refer to maintenance. Petitioner further argued under section 4(a) of the Act (*id.* § 4(a)(1)-(4)), a contractual waiver to a right to a spouse's "property" does not include a waiver of the right to seek statutory maintenance. Alternatively, petitioner asserted that even if the court found she waived her right to seek maintenance, the court should award maintenance under section 7(b) of the Act (*id.* § 7(b)). Specifically, petitioner claimed it was not reasonably foreseeable at the time of the agreement that the parties would have a child with special needs, requiring petitioner to forgo employment to care for A.E.

¶ 9            In his response to petitioner's motion for a declaratory judgment, respondent argued the plain language of the premarital agreement indicated petitioner waived her right to seek maintenance. Additionally, because petitioner drafted the premarital agreement, it must be construed against her. Furthermore, petitioner's alternative argument presented a factual inquiry that should not be subject to a declaratory judgment.

¶ 10           In February 2025, the trial court conducted a hearing on, *inter alia*, petitioner's motion for a declaratory judgment. After taking the matter under advisement, the court entered a written order concluding the premarital agreement constituted a valid waiver of both parties' rights to seek maintenance under the Act. Additionally, the court reserved ruling on petitioner's request

for maintenance under section 7(b) of the Act (*id.*). At an April 2025 hearing, the court further explained its decision as follows:

"The Court just delivered its declaratory judgment opinion. Note that *** it doesn't resolve the issue.

So I will give you a summary that maybe is not included in the opinion. I looked as much as I could at Illinois decisions involving antenuptial or premarital agreements and waiver of maintenance. Most of the cases I found specifically had a section entitled Maintenance. However, my review of the [Act] doesn't require that specific language. The content allowed it to be negotiated. So then I have to go to the four corners of the document. I did find that that language appears to satisfy a waiver of maintenance.

Again, in a perfect world I would have wanted it specified, but *** I don't find that the statute necessarily requires that. Now that doesn't resolve the issue because of the Subsection 7 claim that [petitioner] made and I think I would need to hear more evidence on that. Not only evidence of, you know—because it looks like [petitioner] was working either as a paralegal or a legal assistant back when the marriage first occurred out of Cook County. I don't know what [respondent's] job was or outlook at that time. I know there is a claim about decisions that might have changed the trajectory of [petitioner's] career due to children and special needs and things of that nature. So I would have to know all of that before I could find the undue hardship claim."

¶ 11    This appeal followed.

¶ 12                                   II. ANALYSIS

¶ 13        On appeal, petitioner argues the trial court erred when it entered a declaratory judgment determining the premarital agreement contained a valid waiver of her right to seek maintenance upon the dissolution of her marriage to respondent. Respondent replies that the court properly determined petitioner waived her right to maintenance based on the plain language in the agreement and applicable Illinois law. We reverse and remand for further proceedings.

¶ 14                            A. Standard of Review

¶ 15        "The standard of review applicable to a declaratory judgment depends on the nature of the question presented." *In re Marriage of Turano Solano*, 2019 IL App (2d) 180011, ¶ 73. "Questions of fact are reviewed under the manifest-weight-of-the-evidence standard, but questions of law, like the interpretation of a premarital agreement, are reviewed *de novo*." *Id.* Here, the trial court's declaratory judgment involved its interpretation of the parties' premarital agreement under the Act, which presents questions of contractual law and statutory interpretation that we review *de novo*. See *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶¶ 53, 108.

¶ 16                            B. Premarital Agreements

¶ 17        In Illinois, a premarital agreement is "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." 750 ILCS 10/2(1) (West 2024). A premarital agreement is enforceable without consideration but must be in writing and signed by both parties. *Id.* § 3. Under section 4 of the Act, the parties to a premarital agreement may contract with respect to, *inter alia*, "the rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located" and "the modification or elimination of spousal support." *Id.* § 4(a)(1), (4). Stated differently, "Section 4 [of the Act] effectively permits parties to waive or modify their marital rights by entering into a valid premarital agreement." *In re Marriage of Best*, 228 Ill. 2d 107, 118 (2008). The parties to a

premarital agreement have agreed "their enumerated rights at dissolution are no longer governed by statute to the extent that they are validly modified or waived in their agreement." See *id.* The Act defines "property" as "an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings." 750 ILCS 10/2(2) (West 2024).

¶ 18 "A premarital agreement is a contract and, therefore, the rules governing contract interpretation are applicable." *Woodrum*, 2018 IL App (3d) 170369, ¶ 108. The Appellate Court, Third District, has summarized these rules as follows:

> "The primary purpose of construing a contract is to give effect to the intent of the parties. [Citation.] A court must look to the language of the contract, given its plain and ordinary meaning, as the best indication of the parties' intent. [Citation.] Because words derive their meaning from their context, a contract must be construed as a whole, viewing each part in light of the others. [Citation.] The intent of the parties is not determined from detached portions of a contract or any clause or provision standing by itself. [Citation.] If the terms of a contract are susceptible to more than one meaning, it is ambiguous. [Citation.] In that case, a court may consider extrinsic evidence to determine the parties' intent." *Id.*

Furthermore, any ambiguity in the terms of a contract is generally construed against the drafter. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998).

¶ 19 C. Statutory Right to Maintenance

¶ 20 First, we agree with petitioner that maintenance is an important statutory right that must be expressly waived. "Waiver is the 'intentional relinquishment of a known right' and may occur either through an express statement or be implied through the conduct of the waiving party." *Norman v. U.S. Bank National Ass'n*, 2020 IL App (1st) 190765, ¶ 23 (quoting *Ryder v. Bank of*

*Hickory Hills*, 146 Ill. 2d 98, 104-05 (1991)). " '[W]here an important statutory right is at issue, an explicit manifestation of intent is required before the right in question can be deemed waived.' " *Id.* (quoting *Gallagher v. Lenart*, 226 Ill. 2d 208, 239-40 (2007)).

¶ 21     Illinois Law and Practice has described the nature and purpose of maintenance in Illinois as follows:

> "Maintenance is an allowance in a decree of dissolution, carved out of the estate of the payor spouse, for the support of the receiving spouse. In a general sense, it has been said to mean the allowance required by law to be made to a spouse out of the other spouse's estate for the recipient's support, or partial support, either during a matrimonial action or at its termination. It is the equivalent of the obligation, implied in every marriage contract, that one spouse will furnish the other spouse suitable support and maintenance.
>
> Maintenance is not founded on contract, express or implied, nor does it arise from a business transaction. Rather it arises from the relation of marriage and is founded on the natural and legal duty of a spouse to support the other spouse in a degree corresponding with the spouse's pecuniary ability and social standing. The obligation is not a debt but is a social obligation as well as a pecuniary liability. An award of maintenance is a continuation of those obligations in which the public, through services of its courts, not only maintains an interest but also which it graces with its protection." 16A Ill. L. and Prac. *Divorce; Dissolution of Marriage* § 98 (2017).

¶ 22     A spouse's right to maintenance is currently set forth in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/504 (West 2024)). Under

section 504(a), in a proceeding for dissolution of marriage, "the court may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct, and the maintenance may be paid from the income or property of the other spouse." *Id.* § 504(a). Before awarding maintenance, the trial court must first conclude maintenance is appropriate based on a nonexhaustive list of statutory factors, including "any valid agreement of the parties." *Id.* § 504(a)(1)-(14). Section 504(b-1) sets forth formulas for calculating both "guideline" and "non-guideline" maintenance, which contribute to increased consistency and predictability in maintenance awards. *Id.* § 504(b-1).

¶ 23 We conclude the nature, purpose, and legislative history of statutory maintenance in Illinois indicate it is an important statutory right, requiring any waiver to be explicit. See *Gallagher*, 226 Ill. 2d at 239-40; see also, *e.g.*, *In re Marriage of Cullman*, 185 Ill. App. 3d 1029 (1989) (concluding attorney fees under the Marriage Act were an important statutory right requiring any waiver to be explicit); *In re Marriage of Watson*, 2016 IL App (2d) 141247-U, ¶ 24 (unpublished order concluding explicit language was needed for respondent wife to waive right to continued maintenance under section 510(c) (750 ILCS 5/510(c) (West 2014)) of the Marriage Act). Respondent asserts this conclusion would conflict with the Act because it lacks any provision requiring that a waiver of statutory maintenance must be explicit. We disagree. Nothing about this conclusion is inconsistent with any provision of the Act, and the Act's silence on the issue of whether waiver of statutory maintenance must be explicit does not prevent this court from determining the same after considering the importance of this right.

¶ 24 D. Petitioner's Waiver of Right to Statutory Maintenance

¶ 25 We next consider whether petitioner explicitly waived her right to maintenance under the parties' premarital agreement. We conclude that she did not.

¶ 26    The record does not show petitioner explicitly waived her right to seek statutory maintenance. First, to the extent respondent argues the agreement is ambiguous and should be construed against petitioner as the drafter, such an argument would be inconsistent with the position petitioner explicitly waived her right to seek statutory maintenance. Furthermore, the agreement is silent on the issue of maintenance and contains no reference to any related term, such as spousal support or alimony. See, *e.g.*, *In re Marriage of Kolessar*, 2012 IL App (1st) 102448, ¶ 20 ("Mere silence on the issue is not enough; rather, if a party intends to waive its statutory right a provision stating such should be included in the agreement."). Instead, the premarital agreement contains only petitioner's waiver of any interest in the "property" and "estate" of respondent acquired by reason of the marriage. The agreement does not define "property."

¶ 27    Respondent insists that because the premarital agreement states it is subject to the Act, this court should construe the agreement as adopting the statute's definition of "property." Under this definition, respondent's argument continues, petitioner would have waived any right to respondent's "income" and "earnings" and, therefore, would be precluded from seeking maintenance where such income and earnings provided the basis for a potential maintenance award. See 750 ILCS 10/2(2) (West 2024). We disagree. The statement in the premarital agreement, subjecting it to the Act, is not an adoption of the definitions contained therein for purposes of the agreement. Moreover, in section 4 of the Act, which governs the content of premarital agreements, the legislature specifically distinguished between "(1) the rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located" and "(4) the modification or elimination of spousal support." *Id.* § 4(a)(1), (4). This is consistent with the language of the Marriage Act, which also distinguishes between the disposition of property and the issue of maintenance in dissolution proceedings.

Compare 750 ILCS 5/503 (West 2024) (disposition of property and debts), with *id.* § 504 (maintenance). Given the history of maintenance as an obligation arising from the special relationship between spouses (16A Ill. L. and Prac. *Divorce; Dissolution of Marriage* § 98 (2017)), the plain meaning of section 4 of the Act indicates that provisions of a premarital agreement pertaining to the disposition of personal or real property are necessarily distinct from those pertaining to maintenance. *Id.* Accordingly, the language of the statute does not support respondent's claim that waiving an interest in a spouse's "property" via a premarital agreement is akin to an explicit waiver of the right to seek statutory maintenance.

¶ 28 Because we conclude petitioner did not explicitly waive her right to seek statutory maintenance by a valid premarital agreement, we reverse the trial court's declaratory judgment and remand for further proceedings.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 31 Reversed and remanded.

*In re Marriage of Escamilla*, **2026 IL App (4th) 250366**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lee County, No. 24-DC-18; the Hon. Matthew T. Klahn, Judge, presiding. |
| **Attorneys for Appellant:** | Michael G. DiDomenico, Sean M. Hamann, and Lillian M. O'Neill, of Lake Toback DiDomenico, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Paul T. Whitcombe, of Law Office of Paul Whitcombe, Chtrd., of Dixon, for appellee. |